[No. 10810–7–I.   Division One.   December 30, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT
AARON JACOBSON, *Appellant.*

*David Wohl* of *Washington Appellate Defender Associ-*

*ation,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Mark Sidran, Deputy,* for respondent.

CORBETT, J.—Defendant Scott Jacobson appeals his judgment and sentence for first degree robbery. We affirm.

Defendant was originally charged in juvenile court. A hearing was held pursuant to RCW 13.40.110[1] to determine whether jurisdiction should be transferred to adult court. The judge granted the State's motion to decline jurisdiction. Defendant contends that juvenile court jurisdiction should not be declined unless the court finds by clear and convincing evidence that declination is in the best interest of the juvenile or the public.

Defendant analogizes the decline procedure to that for involuntary mental commitment and parental deprivation proceedings. He cites *Addington v. Texas,* 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979) and *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) to support the contention that "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is signifi-

---

[1]RCW 13.40.110 provides, as follows:

"(1) The prosecutor, respondent, or the court on its own motion may, before a hearing on the information on its merits, file a motion requesting the court to transfer the respondent for adult criminal prosecution and the matter shall be set for a hearing on the question of declining jurisdiction. Unless waived by the court, the parties, and their counsel, a decline hearing shall be held where:

"(a) The respondent is sixteen or seventeen years of age and the information alleges a class A felony or an attempt to commit a class A felony; or

"(b) The respondent is seventeen years of age and the information alleges assault in the second degree, extortion in the first degree, indecent liberties, kidnaping in the second degree, rape in the second degree, or robbery in the second degree.

"(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel.

"(3) When the respondent is transferred for criminal prosecution or retained for prosecution in juvenile court, the court shall set forth in writing its finding which shall be supported by relevant facts and opinions produced at the hearing."

cantly greater than any possible harm to the state." *Addington,* at 427.

With reference to juvenile decline proceedings:

Most courts which have considered this issue have adopted the preponderance of the evidence standard of persuasion.

(Citations omitted.) *In re A.D.L.,* 301 N.W.2d 380, 384 (N.D. 1981); *In re Randolph T.,* 292 Md. 97, 437 A.2d 230, 236 (1981), *cert. denied,* 455 U.S. 993, 71 L. Ed. 2d 854, 102 S. Ct. 1621 (1982). The Supreme Court stated in *Breed v. Jones,* 421 U.S. 519, 537, 44 L. Ed. 2d 346, 360, 95 S. Ct. 1779, 1790 (1975) that "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court."

A juvenile about to be removed from the juvenile justice system is in a much different position than the person about to be committed to a mental institution as in *Addington,* or the parent about to be permanently separated from his child, as in *Santosky.* A court proceeding in the latter cases is a final determination of the person's status. In contrast, a decline proceeding determines the forum wherein guilt or innocence is to be found, not the juvenile's ultimate guilt or innocence. To apply the standard of proof suggested by the defendant "would effectively convert the waiver hearing . . . into a trial upon the merits." *Trotter v. State,* 429 N.E.2d 637, 641 (Ind. 1981). In a decline hearing there need be only such evidence as will permit the court to soundly exercise its discretion. *People v. Cater,* 78 Ill. App. 3d 983, 398 N.E.2d 28, 32 (1980). There is no valid reason for imposition of a higher standard of proof than preponderance of the evidence.

■ Defendant next argues that the Juvenile Justice Act of 1977 had the effect of removing the discretion of the court. We disagree. The net effect of the new law is to reduce the amount of discretion that previously existed with the court regarding which juveniles would be entitled to a declination hearing, not to remove the trial court's dis-

cretion at the hearing. *See* Morin, *Waiver of Juvenile Court Jurisdiction Under the Juvenile Justice Act of 1977*, 14 Gonz. L. Rev. 369, 377 (1979). RCW 13.40.110(2) is permissive and gives to the juvenile court discretion to decline jurisdiction.

The purpose of the hearing is to determine whether declination would be in the best interest of the juvenile or the public. RCW 13.40.110(2). This purpose is best effectuated by the sound exercise of the juvenile court judge's discretion. *State v. Piche*, 74 Wn.2d 9, 14, 442 P.2d 632 (1968), *cert. denied*, 393 U.S. 1041, 21 L. Ed. 2d 588, 89 S. Ct. 666 (1969). The exercise of that discretion, whether to transfer for criminal prosecution or retain for prosecution in juvenile court, must be supported by relevant facts and opinions produced at the hearing and articulated in findings by the court pursuant to RCW 13.40.110(3). This discretion is not unbridled, but is limited by constitutional, statutory and judicially established principles. *In re Harbert*, 85 Wn.2d 719, 723, 538 P.2d 1212 (1975).

Next, defendant challenges the juvenile court's decision to decline jurisdiction under any standard of proof. He contends that jurisdiction should not have been declined because there was no evidence that he could not be rehabilitated in the juvenile system. The court made findings on a standardized form that "the protection of the community requires a decline due to the seriousness of the alleged offense which was committed in an aggressive, violent or willful manner." But the court added that (1) custodial treatment is necessary, and (2) adult modalities of treatment are more appropriate. These findings of fact are of sufficient specificity to permit a meaningful review. *See In re Harbert, supra* at 724. They are supported by substantial evidence and sustain the conclusions of law. *In re Dodge*, 29 Wn. App. 486, 495, 628 P.2d 1343 (1981). The court considered evidence that the crime was committed against a person and in a dangerous manner, that the defendant stipulated to facts sufficient to find him guilty, and that he was in need of intensive counseling that was

not available in the juvenile system. Although two State experts ultimately recommended disposition in the juvenile system, substantial evidence was submitted that the defendant's counseling and treatment needs would be better met in the adult system. Contrary to the defendant's contention, the court considered the eight factors set forth in *Kent v. United States,* 383 U.S. 541, 566–67, 16 L. Ed. 2d 84, 100–01, 86 S. Ct. 1045, 1060 (1966), and adopted by the Washington courts; *In re Harbert, supra* at 723. The court amply demonstrated its concern for the best interest of the child. *State v. Stoudamire,* 30 Wn. App. 41, 44, 631 P.2d 1028 (1981). It is within the court's discretion to decline juvenile jurisdiction subject to reversal only for manifest abuse. *State v. Foltz,* 27 Wn. App. 554, 556, 619 P.2d 702 (1980). The court did not abuse its discretion in declining jurisdiction.

Defendant further claims under an equitable estoppel theory that the court should have remanded the case for a new declination hearing when it became evident that the State failed to file a sexual psychopathy petition, claiming that the opportunity for treatment in the sexual psychopath program was the basis for the court's declination order. *West v. Department of Social & Health Servs.,* 21 Wn. App. 577, 579, 586 P.2d 516 (1978).

Although the court considered the sexual motivation of the defendant in committing the crime, it expressly recognized that there are "no guarantees" and defendant had no more than a "fifty–fifty chance" of success in a sexual therapy program. It does not appear that the court based its decision on the defendant's actual enrollment in such a program, nor did the State mislead the court by representing as a "certainty" that it would file a sexual psychopathy petition. The State openly acknowledged the possibility that the defendant might not prove amenable to treatment in the program. Defendant's claim of equitable estoppel is without merit.

The defendant's final assignment of error is that his stipulation to the facts consisting of his statement and the

police reports was tantamount to a guilty plea, and he contends that there was no showing that he knowingly and voluntarily waived his right to confrontation and privilege against self–incrimination. Defendant disposes of the holding in *State v. Wiley*, 26 Wn. App. 422, 613 P.2d 549, *review denied*, 94 Wn.2d 1014 (1980) by stating that he "respectfully disagrees".

In a trial by stipulation, the defendant does not stipulate to his guilt. The trial court must make that determination. *State v. Davis*, 29 Wn. App. 691, 696, 630 P.2d 938 (1981). Although broad statements concerning guilt were made by the defense counsel in this case, they were not part of the stipulation and the trial court did not treat the defendant's stipulation as a guilty plea. The court questioned the defendant to make sure that he understood the procedure and then considered the police reports and statements before entering findings of fact and conclusions of law. This substantially distinguishes this case from the entry of a guilty plea. *State v. Wiley, supra.* The trial court did not err by accepting the stipulation.

Affirmed.

ANDERSEN, C.J., and SWANSON, J., concur.

Reconsideration denied February 3, 1983.

Review denied by Supreme Court April 18, 1983.