IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>        v.<br><br>MARK BRIAN WARNER,<br><br>        Appellant. | No. 83332-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Mark Warner appeals his conviction following a bench trial for rape of a child in the first degree, child molestation in the first degree, sexual exploitation of a minor, and four counts of possession of depictions of a minor engaged in sexually explicit conduct in the first degree. Warner argues that the State failed to prove he committed first degree rape of a child. He also contends that the charges must be dismissed because he did not receive a speedy trial under CrR 3.3. We disagree and affirm.

FACTS

Mark Warner is the step-grandfather of O.M., born in 2015. In December 2019, four-year-old O.M. informed her mother that Warner exposes himself to her and takes pictures of her genitalia. O.M.'s mother immediately reported the statements to law enforcement. At a forensic interview the following day, O.M. reported that Warner "opened up my vulva" with his fingers and used his cell phone to take pictures of "my

little thing inside my vulva." O.M. said Warner's clothes were "all down" and that she saw his "big thing."

Police obtained a warrant to search the home. The search produced a computer, solely operated by Warner, which contained multiple images of child pornography, some of which appeared to depict O.M. One of these images depicted an adult male hand spreading the vulva of a young girl, consistent with what O.M. described in her forensic interview.

On December 24, 2019, the State charged Warner with first degree rape of a child--domestic violence, sexual exploitation of a minor--domestic violence, first degree dealing in depictions of a minor engaged in sexually explicit conduct--domestic violence, and first degree possession of depictions of a minor engaged in sexually explicit conduct. Trial was set to commence on February 24, 2020, the 60-day speedy trial expiration date.

On February 20, 2020, the State filed an amended information. Warner waived his right to a jury trial at a hearing the following day. During that hearing, the trial court advised the parties: "Assuming that we have a judge available for [February 24], I understand you might be going out but I don't know that for a fact. I tried to find out a little bit more so that I could let you know, but I don't have that information." Defense counsel responded, "Okay." On February 24, the presiding judge asked if the parties were ready to be assigned for trial. Both parties answered ready. The court responded, "Okay. So I am going to send you out for trial today." The court then directed the parties to the court scheduler for assignment.

2

Trial commenced the following morning.  Defense counsel noted that no judges were available the previous day, but he did not object to the date of commencement. The trial court allowed the State to file a second amended information charging Warner with first degree rape of a child–domestic violence (count I), first degree child molestation—domestic violence (count II), sexual exploitation of a minor—domestic violence (count III), and five counts of first degree possession of depictions of a minor engaged in sexually explicit conduct (counts IV-VIII).  Counts I-III also alleged the aggravating circumstances of position of trust and particularly vulnerable victim. Defense counsel objected to the second amended information but expressly declined the court's offer to grant a continuance.

The trial court admitted into evidence three photographs of Warner using his fingers to hold open O.M.'s genitalia.[1]  The State called Katherine Espy, a sexual assault nurse examiner at Harrison Medical Center, as an expert witness.  The prosecutor asked Espy whether she would be able to determine the age of an individual by "reviewing a photo, let's say of a vagina, there's no face attached to that."  Espy responded, "Let me be specific.  When I'm looking at a picture of genitalia, I'm not looking at the vagina unless a speculum is used."  Espy described the "external genitalia" as "anything on the outside of the vagina . . . which includes the labia majora, minora . . . ."

Espy then examined the photographs and testified as follows:

[W]hat I'm seeing is the labia majora is being separated on the right side
of the picture.  It's not easy to see how far out the labia is being pulled, but
on the left side it's flattened, and we can almost see a line at the top

---

[1] Warner does not challenge the factual or legal basis for the court's conclusion that the hand depicted in the photographs is his and that the victim is O.M.

3

where the labia is kind of being pulled over. That part would normally be closed, and it's being opened this way with a finger.

Espy specified that the exposed area was "also kind of shiny, so that tells me that there might be moisture, and that would be the inside part of the labia majora." When asked whether the fingers "are inside or outside of the labia majora," Espy testified:

Well, the thumb, again, is pulling over that left side of the labia majora. If that was let loose, that would go back over. So from this picture, it appears, at least the side where the thumb is, is being pulled out, and that would have been against the internal genitalia. So it would be past the outside of the labia majora.

At the conclusion of the bench trial, the court found Warner guilty on counts I-VII and found the existence of the aggravating circumstances beyond a reasonable doubt. Warner filed a motion for arrest of judgment as to rape of a child in the first degree, arguing insufficient evidence of penetration. The court denied the motion. The court then issued written findings of fact and conclusions of law.

At sentencing, the court dismissed the first degree child molestation count on double jeopardy grounds. The court imposed an exceptional sentence of 462 months of confinement.

Warner appeals.

DISCUSSION

Sufficiency of the Evidence

Warner argues that the trial court erred in concluding that, "[t]o constitute sexual intercourse, there need not be penetration into the vagina — entering the vulva or labia suffices." He contends that insufficient evidence establishes the crime of first degree rape of a child because the State failed to prove that he penetrated O.M.'s vagina. We disagree.

Due process requires the State to prove beyond a reasonable doubt every essential element of a crime. State v. Marohl, 170 Wn.2d 691, 698, 246 P.3d 177 (2010). "[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). We examine the findings to decide whether, when viewing them in the light most favorable to the State, any rational fact finder could have found that the State proved each element of the offense beyond a reasonable doubt. Homan, 181 Wn.2d at 105. In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Unchallenged findings of fact are verities on appeal. State v. Alvarez, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). We review conclusions of law de novo. State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

Under RCW 9A.44.073(1):

A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and the perpetrator is at least twenty-four months older than the victim.

RCW 9A.44.010(14)(a) provides in relevant part that the term "sexual intercourse".

(a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) [a]lso means any penetration of the vagina or anus however slight[.]

Warner does not challenge any of the trial court's findings of fact. Instead, he argues that the plain language of RCW 9A.44.010(14)(a) unambiguously requires

penetration into the vaginal canal, and that "vagina" should be narrowly defined to exclude the vulva or labia. Warner is incorrect.

This court rejected a similar argument in State v. Montgomery, 95 Wn. App. 192, 200, 974 P.2d 904 (1999). In Montgomery, the defendant argued that the evidence fell short of establishing "sexual intercourse" because penetration of the labia does not amount to penetration of the "vagina" as required by RCW 9A.44.010(14)(b). Reading subsections (a) and (b) of RCW 9A.44.010(14) together, this court held that "vagina means all of the components of the female sexual organ and not just '[t]he passage leading from the opening of the vulva to the cervix of the uterus . . . .'" 95 Wn. App. at 200-01 (quoting THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1970 (3d ed. 1992)). Accordingly, "the labia minora are part of the statutory definition of vagina." Montgomery, 95 Wn. App. at 201. See also State v. Delgado, 109 Wn. App. 61, 33 P.3d 753 (2001), reversed on other grounds, State v. Delgado,148 Wn.2d 733, 63 P.3d 792 (2003); State v. Snyder, 199 Wash. 298, 301, 91 P.2d 570 (1939) ("[i]t is not necessary that the penetration should be perfect, . . . nor need there be an entering of the vagina . . . the entering of the vulva or labia is sufficient"); State v. Bishop, 63 Wn. App. 15, 19, 816 P.2d 738 (1991); State v. Weaville, 162 Wn. App. 801, 813, 256 P.3d 426 (2011) ("[o]ur courts have consistently held that any penetration of the female sex organ constitutes 'sexual intercourse' ").

Warner urges us to abandon this well-settled precedent in favor of Katherine Espy's testimony, in which she made an anatomical distinction between the vaginal canal and the external genitalia. But the role of an expert witness is to "assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. "Under ER

704, a witness may testify as to matters of law, but may not give legal conclusions." State v. Olmedo, 112 Wn. App. 525, 532, 49 P.3d 960 (2002). "Furthermore, 'experts may not offer opinions of law in the guise of expert testimony.' " Id. (quoting Stenger v. State, 104 Wn. App. 393, 407, 16 P.3d 655 (2001). Espy's testimony cannot be construed to undermine legal precedent establishing that the vagina, vulva, and labia are constituent parts of a single organ for the purpose of defining "sexual intercourse" in the rape statute.

The trial court's unchallenged findings of fact, which are verities on appeal, established that Warner's thumb "was against the internal part of [O.M.'s] labia majora, past the outside of the labia majora." The findings further established that Warner's thumb was located on a "shiny area," which "indicates a moist area, and moisture would be on a part of the vagina that is inside the vagina." This finding supports the court's conclusion that the State proved the essential elements of the crime of rape of a child in the first degree beyond a reasonable doubt.

Speedy Trial

Warner argues that the charges against him must be dismissed because the trial court violated his speedy trial rights under CrR 3.3. An accused in-custody defendant must be brought to trial within 60 days after arraignment. CrR 3.3(b)(1)(i), (c)(1). Warner is correct that trial commenced on the morning of February 25, 2020, one day after the 60-day speedy trial expiration date. However, defense counsel made no objection below. We will not review an issue raised for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). Because violations of CrR 3.3 are not constitutionally based, they cannot be raised for the first time on appeal.

State v. Smith, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985); State v. MacNeven, 173 Wn. App. 265, 268, 293 P.3d 1241 (2013).

Warner argues that defense counsel did not object to the trial date when it was set because that date was within the 60-day speedy trial period. He contends that the time for trial expired before any objection could be made and that the delay was "inexplicable." However, three days before the speedy trial expiration date, the court informed the parties that a judge might not be available on February 24, the scheduled trial date. Defense counsel did not point out that February 24 was the speedy trial expiration date or seek a continuance in the event that no judge was available on that date. Defense counsel did not object on February 24 when told that the judge would not be available the following morning and did not object when trial commenced on the 61st day. Although the trial court is "ultimately responsible" for ensuring compliance with CrR 3.3, "counsel for a defendant bears some responsibility for asserting CrR 3.3 rights of a client and assuring compliance with the rule before the speedy trial period expires." CrR 3.3(a)(1); CrR 3.3(d)(3); State v. Carson, 128 Wn.2d 805, 815, 912 P.2d 1016 (1996). "Timely objections are required so that, if possible, the trial court will have an opportunity to fix the error and still satisfy the speedy trial requirements." State v. Chavez-Romero, 170 Wn. App. 568, 581, 285 P.3d 195 (2012). Counsel's failure to

advise the trial court of the situation waives his assertion of a CrR 3.3 violation on appeal.

     Affirmed.

_____
Coburn, J.

WE CONCUR:

_____
Verellen, J.

_____
Appelwick, J.