IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40021-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM H. MANES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — At the conclusion of a stipulated facts trial, Williams Manes was convicted of assault in the second degree and unlawful possession of a firearm in the first degree. Mr. Manes appeals, arguing: (1) he was deprived of his right to trial; (2) he was misinformed about his rights; (3) the trial court's findings of fact are insufficient to establish guilt; (4) his rule-based and constitutional right to a speedy trial was violated; and (5) the evidence was insufficient to prove he was the individual who committed the crimes. In a statement of additional grounds for review (SAG), Mr. Manes raises two issues related to his competency evaluation.

As it relates to the charge of assault in the second degree, we agree that the trial court's findings of fact do not support its conclusions of law, and insufficient evidence was presented to support a finding of guilt. We remand for the trial court to enter an acquittal on the assault in the second degree charge and supplement its findings of fact related to the unlawful possession of a firearm in the first degree charge.

## BACKGROUND

During the evening hours of September 8, 2022, law enforcement was contacted by an individual who observed Mr. Manes walking with a rifle on West Jumpoff Road in Stevens County, Washington. The reporter claimed Mr. Manes told him there was a body in Jump Off Joe Lake, that he could smell the body, and that he was going to make the suspect confess to killing someone.

Tia Nash called law enforcement to report similar observations. Ms. Nash had found a stray dog and drove past Mr. Manes as she attempted to locate the dog's owner. Ms. Nash inquired of Mr. Manes whether the dog belonged to him. Mr. Manes responded by screaming at Ms. Nash to call the sheriff. When Ms. Nash informed Mr. Manes that she did not have a phone, Mr. Manes pointed his rifle at her. Ms. Nash was very scared but convinced Mr. Manes to put the gun down. Ms. Nash departed and reported the incident to law enforcement.

Mr. Manes then called law enforcement, "yelling about a body in the lake." Clerk's Papers (CP) at 4. Mr. Manes claimed his canine was a cadaver dog and that it

2

had jumped into the lake. He reported that the lake water smelled and tasted weird. Mr. Manes admitted to having a squirt gun loaded with habanero sauce when asked about a firearm.

Deputy J. Stearns responded to the calls, located Mr. Manes, ordered him to the ground, and placed him in handcuffs. Mr. Manes repeated his claims that there was a body in the lake and that the water tasted bad to Deputy Stearns. Mr. Manes further asserted that there was a cult in the area. Deputy Stearns informed Mr. Manes that someone had reported that he had pointed a firearm at them, and Mr. Manes responded that, "his dog was going up to them and he is not trained to do that." CP at 4. Mr. Manes eventually revealed the location of the firearm that resulted in the deputies locating a rifle "loaded with .22 round and a 410 shell as it fires both." CP at 4.

Deputy Stearns learned that Mr. Manes was a convicted felon and placed him under arrest for unlawful possession of a firearm. Mr. Manes confessed to leaving a crate of ammunition on the front porch of a church. Deputy Stearns located a "newspaper box" on the front steps of the church that contained numerous beers cans with screw-top lids that Mr. Manes claimed were filled with lake water and empty shell casings. Mr. Manes was then booked into jail.

On September 14, 2022, Mr. Manes with charged with assault in the second degree and unlawful possession of a firearm in the first degree. The trial court ordered Mr. Manes to undergo a competency evaluation prior to his arraignment. A competency

evaluation, dated December 9, 2022, found Mr. Manes was not competent to stand trial.

A subsequent competency evaluation, dated April 17, 2023, found Mr. Manes "possessed

the requisite knowledge and capabilities to proceed in this case." CP at 60. After a series

of bench warrants, speedy trial waivers, and motions for continuances, Mr. Manes was

brought to trial on October 17, 2023.

Mr. Manes waived his right to a jury before trial commenced. With advice from

his attorney, Mr. Manes signed a "Statement of Defendant on Submittal or Stipulation of

Facts." CP at 66. The statement included:

> I understand that, by this process, I am giving up . . . the right to hear and
> question witnesses, the right to call witnesses in my own behalf, and the
> right to testify or not to testify.

CP at 66. Mr. Manes agreed to "Stipulated Facts for Purposes of Stipulated Facts Bench

Trial." CP at 67. In part, the stipulation provided:

> 1. The court may consider all information in the court file for this matter.
>
> 2. On or about September 8, 2022, the defendant assaulted Tia Marie Nash,
> a human being, with a deadly weapon; specifically, a rifle. Contrary to
> RCW 9A.36.021 (1)(c).
>
> . . . .
>
> 4. There is sufficient evidence to convict the defendant of assaulting Ms.
> Nash with a deadly weapon, while armed with a firearm, as defined in
> RCW 9A.36.021(1)(c), and RCW 25 9.41.010, and RCW 9.94A.533(3), as
> charged in count 1 of the Information.
>
> 5. On or about September 8, 2022, the defendant, after previously having
> been convicted or having been found not guilty by reason of insanity in this
> State or elsewhere of a serious offense as defined in RCW chapter 9.41, did

4

unlawfully own or have in his possession or control, a firearm; to wit, a rifle. Contrary to RCW 9.41.040(1)(a)(b).

6. There is sufficient evidence to convict the defendant of Unlawful Possession of a Firearm in the First degree as defined in RCW 9.41.040(1)(a)(b), as charged in count 2 of the Information.

CP at 67-68.

Mr. Manes' attorney informed the court that she believed Mr. Manes would be waiving "quite a few rights," and the basis for a stipulated facts trial was Mr. Manes' desire to preserve his right to appeal his alleged substantive due process claim arising from a competency evaluation being ordered prior to arraignment. Rep. of Proc. (RP) at 14, 17. Mr. Manes stated to the court, "I don't have an argument with the prosecutor on what happened, it's just why it happened. I want to try to explain that." RP at 23. The court informed Mr. Manes, "You can produce witnesses. You can—you know you can present your case if you want." RP at 23. Mr. Manes replied, "The only witness I will call is myself and it was—it would just be to explain why everything was accused." RP at 24. During the defendant's opening statement, Mr. Manes' counsel stated:

> Your Honor, I know that we just entered an order saying that he waived his right to testify, but he would like to make a statement before sentencing explaining what happened.
>
> And so, I would be—but it's—we're not—I think it's not so much testimony at trial as—as statement from defendant at sentencing.

RP at 30.

Based on the stipulated facts, the court found Mr. Manes guilty of both counts. The trial court found, in part, "William Manes aimed a rifle in the direction of Tia Nash,"

and "Mr. Manes was a convicted felon whose right to possess a firearm had never been restored by a court record." CP at 92-93. The court concluded, "William Manes, by his intentional conduct, placed Tia Nash in fear that she would be shot with the rifle." CP at 93. Mr. Manes was sentenced to 93 months of confinement.

Mr. Manes timely appeals.

## ANALYSIS

### WHETHER MR. MANES WAS DEPRIVED OF HIS RIGHT TO TRIAL AND MISINFORMED OF HIS RIGHTS

Mr. Manes argues he was deprived of his right to trial because two of the stipulated facts were actually conclusions that conceded his guilt, and he was misinformed about his rights at a stipulated facts trial.

#### *Violation of Right to Trial*

Mr. Manes chose to preserve his right to appeal by adjudicating his case through a stipulated facts bench trial. RP at 10, 17; *State v. Johnson*, 104 Wn.2d 338, 342-43, 705 P.2d 773 (1985). A stipulated facts trial differs from a guilty plea in that a defendant does not stipulate to his guilt, retains all the rights he would otherwise have, and agrees that what the State presents is what the witnesses would testify to. *Id.* at 342; *State v. Jacobson*, 33 Wn. App. 529, 534, 656 P.2d 1103 (1982). In a stipulated facts trial, the State still carries the burden of proving the defendant's guilt beyond a reasonable doubt, and the trial court must make an independent determination of the defendant's guilt. *Johnson*, 104 Wn.2d at 342.

6

At the conclusion of a stipulated facts bench trial, the court is required to enter findings of fact and conclusions of law. CrR 6.1(d). Each element of a charged crime must be addressed separately, articulating the factual basis for each conclusion of law. *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). The findings must also specifically declare that an element has been met. *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).

Here, Mr. Manes contends two of the stipulations amounted to conclusions that conceded guilt, thereby depriving him of his right to a trial. Stipulation 4 reads:

> There is sufficient evidence to convict the defendant of assaulting Ms. Nash with a deadly weapon, while armed with a firearm, as defined in RCW 9A.36.021(1)(c), and RCW 9.41.010, and RCW 9.94A.533(3), as charged in count 1 of the Information.

CP at 67. Stipulation 6 states:

> There is sufficient evidence to convict the defendant of Unlawful Possession of a Firearm in the First Degree as defined in RCW 9.41.040(1)(a)(b), as charged in count 2 of the Information.

CP at 68. We disagree stipulations 4 and 6 deprived Mr. Manes of his right to a trial.

First, the trial court did not adopt either stipulated fact when it concluded Mr. Manes was guilty of each count. Rather, after reviewing the stipulated facts, which included the entirety of the court file, the trial court made independent findings as to each element of each count. Indeed, the trial court acknowledged it "read the police report that's attached to the stipulated facts." RP at 31. Therefore, even though two of the

7

challenged stipulated facts may have been improper, any error was cured by the trial court's independent assessment of the evidence.

Secondly, Mr. Manes invited the error for which he now complains. The invited error doctrine prohibits a defendant from inviting an error at trial only to complain about it on appeal. *State v. Ellison*, 172 Wn. App. 710, 715, 291 P.3d 921 (2013). With advice from his trial counsel, Mr. Manes agreed to the Stipulated Facts for Purposes of Stipulated Bench Trial that include stipulations 4 and 6. The invited error doctrine bars Mr. Manes from now challenging facts he stipulated to at trial.

### *Misinformed of Rights*

Mr. Manes claims that "one of the documents connected to the stipulated facts trial misinformed [him] about his rights." Appellant's Open. Br. at 10. However, Mr. Manes makes a tepid attempt to advance this argument without citing any authority or addressing how he was prejudiced. An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Issues presented without meaningful analysis need not be considered. *State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). We decline review of this alleged error.

8

No. 40021-2-III
*State v. Manes*

WHETHER THE TRIAL COURT'S FINDINGS OF FACT SUPPORT ITS CONCLUSIONS OF LAW

Mr. Manes argues the trial court's findings of fact do not support its conclusions of guilt to assault in the second degree and unlawful possession of a firearm in the first degree. We agree the trial court's findings of fact do not support its conclusion of guilt for the assault in the second degree charge, reverse the conviction, and remand for the trial court to enter a judgment of acquittal. We disagree with Mr. Manes' argument that the findings of fact do not support a conviction for unlawful possession of a firearm in the first degree.

A trial court's conclusions of law are reviewed de novo to see if they are supported by the trial court's findings of fact. *City of Seattle v. Megrey*, 93 Wn. App. 391, 393, 968 P.2d 900 (1998). We review the trial court's findings of fact to determine whether they are supported by substantial evidence. *State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 63, 7 P.3d 818 (2000). If an appellant fails to assign error to any of the trial court's findings of fact, they become verities on appeal. *In re Santore*, 28 Wn. App. 319, 323, 623 P.2d 702 (1981).

*Assault in the Second Degree*

To convict Mr. Manes of assault in the second degree, the State was required to prove beyond a reasonable doubt that "in the . . . State of Washington, on or about September 8, 2022, [Mr. Manes] did assault Tia Marie Nash, a human being, with a deadly weapon, to-wit: a rifle." CP at 1-2. Assault is defined, in part, as putting another

9

in apprehension of harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

Under this definition, the State must prove the defendant acted with an intent to create in

his victim a reasonable apprehension of harm. *State v. Byrd*, 125 Wn.2d 707, 713, 887

P.2d 396 (1995).

Mr. Manes argues the trial court erroneously found that "William Manes *aimed* a

rifle in the direction of Tia Nash" when the stipulated facts reveal that Mr. Manes

"*pointed* the rifle at [Ms. Nash]." CP at 92, 5 (emphasis added). We fail to recognize the

distinction between the verbs "aim" and "pointed" and consider the terms synonymous.

The record supports the trial court's finding that Mr. Manes "aimed a rifle in the direction

of" Ms. Nash. CP at 92.

Mr. Manes next contends the trial court's conclusion that "William Manes, by his

intentional conduct, placed Tia Nash in fear that she would be shot with the rifle" is

insufficient to constitute an assault in the second degree conviction. CP at 93. We agree.

The stipulated facts indisputably establish that Mr. Manes intentionally pointed a

rifle at Ms. Nash. However, the State was not required to simply prove that Mr. Manes

intentionally pointed the rifle at Ms. Nash to secure a conviction. Rather, the State was

required to prove that Mr. Manes pointed the rifle at Ms. Nash with the intent to create in

her a reasonable apprehension of harm. The trial court did not make such a finding.[1]

The trial court's findings of fact do not support its conclusion that Mr. Manes committed the crime of assault in the second degree.

When a defendant is found guilty of a crime following a bench trial and, on review, the trial court's findings of fact are found to be insufficient to support a conviction, the appropriate remedy may be a remand to permit entry of further findings. *State v. Souza*, 160 Wn. App. 534, 541, 805 P.2d 237 (1991). On remand, the trial court may not take additional evidence, meaning it must base its findings of fact and conclusions of law on the evidence already taken. *Head*, 136 Wn.2d at 625.

Here, Mr. Manes claims remand for additional findings would be futile because the stipulated facts show his conduct placed Ms. Nash in fear of being shot, but fail to establish that he acted with the intent to create in Ms. Nash a reasonable apprehension of harm. We agree with Mr. Manes' contention that the stipulated facts fail to support the requisite mens rea for assault in the second degree. Albeit Ms. Nash was rightfully in fear of being shot, Mr. Manes pointed the rifle at her while "screaming about a body in the lake" and "screaming at her to call the Sheriff." CP at 4. Mr. Manes' intent was revealed when he stated to Deputy Stearns that he pointed the rifle at her "because his

---

[1] Relatedly, the trial court concluded that "Ms. Nash [was] in fear that she would be shot by the rifle." CP at 93. Although Ms. Nash was likely in fear of being shot, this conclusion is irrelevant to Mr. Manes' intent in pointing the rifle at Ms. Nash.

dog was going up to them and he is not trained to do that." CP at 4. The record lacks the necessary evidence to show beyond a reasonable doubt that Mr. Manes pointed the rifle at Ms. Nash with the intent to create in her a reasonable apprehension of harm.

Mr. Manes therefore requests we remand for the trial court to enter a judgment of guilty to the lesser included offense of unlawful display of a weapon (RCW 9.41.270(1)). A defendant may be convicted at trial on the charged offense or "any degree inferior thereto, or of an attempt to commit the offense." RCW 10.61.003. When an appellate court finds the evidence insufficient to support a conviction for the charged offense, it may direct a trial court to enter judgment on a lesser degree of the offense charged when the lesser degree was necessarily proved at trial. *E.g.*, *State v. Gilbert*, 68 Wn. App. 379, 384-87, 842 P.2d 1029 (1993).

Although the evidence before the trial court may support a conviction for unlawful display of a weapon, unlawful display of a weapon is not a lesser included offense to assault in the second degree,[2] is not a lesser degree of assault, nor does it constitute an attempt to commit the offense. We decline to remand for the trial court to enter a judgment of guilt to the crime of unlawful display of a weapon.

Because the trial court may not take additional evidence on remand, and the record is insufficient to establish that Mr. Manes pointed the rifle at Ms. Nash with the

---

[2] *State v. Hurchalla*, 75 Wn. App. 417, 421, 877 P.2d 1293 (1994).

12

intent to create in her a reasonable apprehension of harm, we reverse the assault in the second degree conviction and remand for the trial court to enter a judgment of acquittal.

*Unlawful Possession of a Firearm in the First Degree*

Mr. Manes argues the trial court's findings of fact do not support a conviction for unlawful possession of a firearm in the first degree. Specifically, Mr. Manes asserts the trial court failed to find, and the record does not support, that he had previously been convicted of a serious offense as defined in RCW 9.41.010. We agree the trial court's findings are deficient, but conclude the record contains sufficient facts to support the conviction. We remand for the trial court to supplement its findings of fact.

Mr. Manes stipulated to the facts contained in the entirety of the court file. Within the court file is a supplemental affidavit of probable cause that states:

> Criminal history information regarding the defendant provided by the Washington State Patrol reports that he has been convicted once for the crime of VUCSA Possession of Controlled Substance with Intent to Deliver and twice for the crime of Burglary in the Second Degree. The drug offense is defined as a serious offense in RCW 9.41.010(24) [sic] and burglary is defined in RCW 9.41.010(4) [sic] as a crime of violence. These offenses are predicate offenses for the commission of the crime of Unlawful Possession of a Firearm in the First Degree in RCW 9.41.040(1)(a).

CP at 6-7. The trial court recognized that "[l]aw enforcement was informed by dispatch that Mr. Manes is a convicted felon and prohibited from possessing firearms. I don't have the judgment and sentence, but the—there's a stipulation to that fact being true." RP at 32. Further, Mr. Manes stipulated that he had previously been "convicted . . . of a serious offense as defined in RCW chapter 9.41." CP at 68.

13

Although the trial court neglected to articulate the predicate felony offense that made Mr. Manes ineligible to possess a firearm, substantial evidence in the record supports the finding that Mr. Manes had been convicted of a crime of violence as defined in former RCW 9.41.010(33)(a) (2022) and a felony violation of the Uniform Controlled Substances Act (RCW ch. 69.50) as defined in former RCW 9.41.010(33)(b) (2022). We remand for the trial court to supplement its findings consistent with the record.

WHETHER MR. MANES' RIGHT TO A SPEEDY TRIAL WAS VIOLATED

Mr. Manes argues his rule-based and constitutional right to a speedy trial was violated when his arraignment was delayed several months after the court ordered competency restoration that he never received. The State argues the issue was not preserved and, even if it was, Mr. Manes failed to designate necessary portions of the record. We agree with the State.

*Rule-based Speedy Trial*

We generally decline reviewing claims of error not raised in the trial court. RAP 2.5. An exception to the general rule permits a party to raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). This exception is limited and does not permit all asserted constitutional claims to be raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). To be reviewable, the alleged constitutional claim must be "manifest," which requires a showing of actual prejudice. *Id*. at 935. To establish actual prejudice, the appellant must

14

make a plausible showing that the asserted error had practical and identifiable consequences during trial. *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999).

CrR 3.3 violations are not constitutionally based and generally cannot be raised for the first time on appeal. *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985); *State v. MacNeven*, 173 Wn. App. 265, 268, 293 P.3d 1241 (2013).

Here, Mr. Manes does not argue his rule-based right to a speedy trial is of constitutional dimension nor whether the error was manifest. Rather, Mr. Manes simply asserts an unpreserved rule-based violation. RAP 10.3(a)(6) requires an appellant to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Issues presented without meaningful analysis need not be considered. *Rafay*, 168 Wn. App. at 843. Because Mr. Manes fails to provide a meaningful analysis of his claimed error related to a rule-based speedy trial violation, we decline review.

### *Constitutional Speedy Trial*

Mr. Manes claims he was deprived of his constitutional right to a speedy trial due to the State's delay in providing him competency restoration treatment. Contrary to his claim, trial delays based on a defendant's competency issues are excluded from constitutional speedy trial inquiry. *Trueblood v. Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1044 (9th Cir. 2016). Because Mr. Manes was found not competent, the delay to

trial was necessary in the interests of justice, and the time between September 20, 2022,

and April 17, 2023, is not relevant to the speedy trial inquiry.

WHETHER SUFFICIENT EVIDENCE ESTABLISHED MR. MANES WAS THE INDIVIDUAL
WHO COMMITTED THE CRIMES

Mr. Manes argues there was insufficient evidence presented at trial to prove he

was the individual who committed the crimes charged. We disagree.

The due process clause of the Fourteenth Amendment to the United States

Constitution requires the prosecution to prove beyond a reasonable doubt every fact

necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068,

25 L. Ed. 2d 368 (1970). The sufficiency of the evidence is a question of law this court

reviews de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "In claiming

insufficient evidence, the defendant necessarily admits the truth of the State's evidence

and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d

102, 106, 330 P.3d 182 (2014).

"The test for determining the sufficiency of the evidence is whether, after viewing

the evidence in the light most favorable to the State, any rational trier of fact could have

found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d

1068 (1992). When analyzing a sufficiency of the evidence claim, all reasonable

inferences must be drawn in favor of the State. *Id.* "[I]nferences based on circumstantial

evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178

Wn.2d 1, 16, 309 P.3d 318 (2013).

16

Mr. Manes appeared before the court and signed at least two documents in the presence of the court a Statement of Defendant on Submittal or Stipulation of Facts. and the Stipulated Facts for Purposes of Stipulated Facts Bench Trial. In both documents, Mr. Manes identifies himself as "William H. Manes." CP at 66-67. Further, in response to the court's request that Mr. Manes provide his full name and date of birth, Mr. Manes replied, "My full name is William Henry Manes and I was born August 7th, 1981." RP at 10. Mr. Manes' self-reported full name and date of birth mirror the name and date of birth on the information, declaration of probable cause, and supplemental affidavit for probable cause.

In viewing this evidence in a light most favorable to the State, any rational trier of fact could have found the individual appearing before the court for the stipulated facts trial was the individual who committed the crimes alleged by the State.

SAG

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." Mr. Manes raises two additional grounds for review.

Although a SAG need not refer to the record or provide citation to authority, an appellant is required to inform this court of the "nature and occurrence of the alleged errors." RAP 10.10(c). A SAG cannot be reviewed if the claim is too vague to properly

inform us of the alleged error. *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011).

In his first SAG, Mr. Manes complains the competency evaluation was based on him not knowing why he was charged with assault. This bare assertion does not articulate the nature and occurrence of the error with enough particularity for our review. We decline review.

In his second SAG, Mr. Manes complains his silence was used against him during his competency evaluation on December 9, 2022. He indicates he was exercising his right to remain silent, and that the evaluator concluded he needed restoration because he remained silent.

Antithetical to Mr. Manes' contention, the psychologist who conducted the competency evaluation never indicated that Mr. Manes remained silent. Rather, the competency evaluation notes that Mr. Manes engaged in a lengthy interview with the psychologist. The record does not support Mr. Manes' assertion that his silence was used as a basis for recommending competency restoration.

## CONCLUSION

We remand for the trial court to reverse the conviction for assault in the second degree and to enter a judgment of acquittal. We affirm the conviction for unlawful possession of a firearm in the first degree, but remand for the trial court to supplement its findings of fact.

No. 40021-2-III
*State v. Manes*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.

19